UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ANDRE WILLIAMS, SR.,                    )
                                        )
        Petitioner,                     )
                                        )
    v.                                  )   Case No. 4:14-CV-412-SNLJ-SPM
                                        )
IAN WALLACE,                            )
                                        )
        Respondent.                     )

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

In accordance with the Memorandum filed herein,

**IT IS HEREBY ORDERED** that Petitioner Andre Williams, Sr.'s request to expand the
record to include Exhibit 1 to his reply is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Andre Williams, Sr.'s Motion for an Order
Compelling Discovery (Doc. 42) is **DENIED**.

**IT IS HEREBY RECOMMENDED** that Petitioner Andre Williams, Sr.'s petition for a
writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that this case be **DISMISSED**.

The parties are advised that they have fourteen (14) days to file written objections to this
Report and Recommendation and Order pursuant to 28 U.S.C. § 636(b)(1), unless an extension of
time for good cause is obtained. Failure to file timely objections may result in waiver of the right
to appeal questions of fact.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of January, 2017.

| | | |
|---|---|---|
| ANDRE WILLIAMS, SR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-CV-412-SNLJ-SPM |
| | ) | |
| IAN WALLACE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

This matter is before the undersigned on the petition of Missouri state prisoner Andre Williams, Sr. ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Also pending are Petitioner's request, in his reply, to expand the record through the attachment of "newly discovered evidence" to his reply (Doc. 24) and Petitioner's Motion for an Order Compelling Discovery (Doc. 42). This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) for a report and recommendation on dispositive matters, and for rulings on nondispositive matters.

### I.  FACTUAL BACKGROUND

On July 6, 2011, Petitioner was indicted on a charge of robbery in the first degree based on an incident in which he forcibly stole United States currency in the possession of Hardee's and in the course of the stealing displayed what appeared to be a deadly weapon. Resp't Ex. A, at 10.[1] At a plea hearing held on August 8, 2011, the prosecutor stated that the testimony at trial would be that Petitioner entered Hardee's with his face covered, produced what appeared to be a handgun, and demanded money from the safe; that an employee surrendered the money to Petitioner and

---

[1] The page numbers cited refer to the page numbers on the relevant electronically filed documents.

gave police a description of the individual; and that Victoria Pluma identified Petitioner in a photo lineup and gave a description of the clothing of the individual she saw come outside of Hardee's once the money was taken, and it was Petitioner. *Id.* at 22. Petitioner testified that the prosecuting attorney's statement was substantially true and correct. *Id.* Upon questioning, he also testified that he had had sufficient opportunity to discuss the case with his attorney, that he was satisfied that his attorney was aware of all the information he needed to adequately advise and represent Petitioner, and that he was satisfied with the services his attorney had provided. *Id.* at 18-19. He also testified that he understood that at a trial, he would be entitled to face witnesses who would testify and to ask them questions, and that by pleading guilty he would not be able to confront those witnesses or ask them questions. *Id.* at 19-20. On August 11, 2011, Petitioner entered a plea of guilty to one count of robbery in the first degree, judgment was entered, and Petitioner was sentenced. *Id.* at 12-15.

Petitioner did not appeal from the judgment of conviction. In his amended motion for post-conviction relief under Missouri Supreme Court Rule 24.035, Petitioner asserted the following claims: (1) ineffective assistance of plea counsel, in that plea counsel failed to investigate the defense that Ms. Pluma had not actually identified Petitioner as the person who robbed her and her co-workers; and (2) ineffective assistance of plea counsel, in that plea counsel failed to file and litigate a motion to suppress the identification purportedly made by Ms. Pluma; *Id.* at 95-114. The motion court denied both claims. *Id.* at 124-29. Petitioner raised both claims in his appeal. Resp't Ex. B. The Missouri Court of Appeals affirmed the decision of the motion court. Resp't Ex. D. & Ex. E.

On March 3, 2014, Petitioner filed the instant petition, in which he asserts six grounds for relief: (1) actual innocence; (2) violation of *Brady v. Maryland* and Missouri Supreme Court Rule

25.03 based on the prosecution's withholding of exculpatory evidence; (3) police and prosecutorial misconduct; (4) ineffective assistance of plea counsel based on the failure to investigate whether the identification evidence relied on by the state was fabricated; (5) ineffective assistance of plea counsel based on the failure to investigate the defense that Ms. Pluma did not actually identify Petitioner as the person who robbed her; and (6) ineffective assistance of plea counsel based on the failure to file and litigate a motion to suppress Ms. Pluma's identification of Petitioner. Respondent filed a response, and Petitioner filed a reply.

## II.    PETITIONER'S REQUEST TO EXPAND THE RECORD

Upon review of Petitioner's reply and the exhibits attached thereto, the undersigned determined that Petitioner was attempting to expand the record to include new evidence that may not have been part of the record before the state court. Specifically, Petitioner submitted with his reply a document that he labeled "Exhibit 1" and "Newly Discovered Evidence." *See* Doc. 24-1. This document is a Chesterfield Police Department Photo Lineup (labeled Lineup #79358) that contains six photographs. Photo #4 (bearing the handwritten label #4002) has a circle and black box around it, with the name "Victoria Pluma" written next to the circle. The document also contains a handwritten notation indicating that Photo #1 (bearing the handwritten label #41186542) is Petitioner's photograph. Petitioner claims that this evidence shows that Victoria Pluma, the state's witness who purportedly identified Petitioner in a photographic lineup, actually circled and signed the photograph of someone other than Petitioner.[2]

Under Rule 7 of the Rules Governing § 2254 Cases, a federal habeas court may permit expansion of the record to include additional materials, including documents. Rule 7(a)-(b). The judge may require that the materials be authenticated. Rule 7(a). In addition, the judge must give

---

[2] Petitioner's plea counsel was provided with a version of this document that did not have any photographs circled or identified. *See* Resp't Ex. H, at 2-3, 6.

the party against whom the additional materials are offered the opportunity to admit or deny their correctness. Rule 7(c). Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." With respect to a public record, examples of evidence that would suffice include evidence that "a document was recorded or filed in a public office as authorized by law" or evidence that that "a purported public record or statement is from the office where items of this kind are kept." Rule 901(b)(7).

The undersigned gave Petitioner the opportunity to authenticate Exhibit 1, and gave the Respondent the opportunity to admit or deny the correctness of the document. To attempt to authenticate Exhibit 1, Petitioner submitted a version of Lineup #79358,[3] along with a document purporting to be a certification page from the Circuit Clerk of St. Louis County. The top half of the document contains a handwritten paragraph stating as follows:

> The Chesterfield Police Department Photo Line-Up Document # 79358 that is enclosed herewith this certified letter of mines was somehow discovered among a bunch of old court reporter legal books and other old legal materials that are kept in one of the storage closets in the courthouse that everyone uses. I surely don't know who put it there, however I am sending up a copy of it. Also, please be advised that I have sent notice also to the prosecutors office concerning your request and this strange matter on March 2012 and May 25 2012. I do apologize for the inconvenience and long delay. I further note that the cost of photo line-up #79358 satisfies your request, because there are no photos (single) with any signature on it front or back. The copy of photo line up #79358 that I'm sending to you is the only photo line-up that has a signature and photo that is circled on its front side and I am sending the original color copy to the prosecutor office to the original prosecutor of your case listed below. I have attached copies of your request that are filed with this office as well.

---

[3] Notably, this version of Lineup #79358 differed from the Exhibit 1 originally submitted with Petitioner's Reply, in that it did not contain a dark black box around Photo #4, nor did it contain any label indicating that Photo #1 was Petitioner. It does contain the circle around Photo #4 and the name "Victoria Pluma" next to Photo #4.

*See* Doc. 28-4. The lower half of the document contains the typewritten statement, "I certify and attest that the above is a true copy of the original record of the Court in case number_____ as it appears on file in my office," with "10SL-Cl09241-01" written in the blank space. *Id.* The date is October 10, 2013, and the mark on the signature line for "Deputy Clerk" is illegible. *Id.* Petitioner asserts that he received these documents in October 2013, in response to a request he sent in May 2012.

The undersigned finds that Petitioner has failed to authenticate the document he seeks to introduce into the record. Neither the document itself nor the "certification" submitted by Petitioner contain any indicia of reliability. The inauthenticity of the "certification" is apparent on its face, given its handwritten nature, the presence of clear grammatical errors, its statement that a photo lineup was "somehow discovered" in a storage closet "among a bunch of old court reporter legal books and other old legal materials," and the illegible signature. The unexplained differences between the version of Exhibit 1 Petitioner filed with his Reply and the version of Exhibit 1 that Petitioner purportedly received from the Circuit Clerk cast further doubt on the authenticity of Exhibit 1. Moreover, the existence of a six-person photo lineup sheet with a circle and signature is flatly inconsistent with the police report's description of how the identification process took place. The police report indicates that the photo lineup was not conducted by having Ms. Pluma look at multiple photographs on the same page and circling one, but rather by having Ms. Pluma look at individual photographs that had been cut out of a photo lineup.[4] *See* Resp't Ex. A, at 118-19. The fact that Exhibit 1 is completely inconsistent with the police report's description of how the identification process was conducted further indicates that it is inauthentic.

---

[4] Similarly, the "Photo Lineup Eyewitness Identification Witness Preparation Form" that Petitioner attached to his motion to compel discovery in this case, and that Ms. Pluma signed, specifically states that the Ms. Pluma would be handed photographs one at a time, in random order. *See* Doc. 42-1, at 10.

Furthermore, after Petitioner submitted these documents, Respondent submitted a letter from the legal counsel for the Circuit Clerk of St. Louis County stating that he had reviewed the documents submitted by Petitioner (Exhibit 1 and the "certification" page) and shown the documents to the Chief Deputy Circuit Clerk and to various managers, and that none of them believed these were genuine documents from the court file or that the certification page had been prepared by the Circuit Clerk's office. *See* Resp't Ex. G. He also stated that none of them recognized the mark on the signature line of the certification page as being the signature of an authorized employee of the office; that the Chesterfield Police Department Photo Lineup in the exhibit was not in the court file; that there was no docket entry indicating that a certified copy was made on the date on which the certification was purportedly issued; and that "it would be highly unusual for an authorized employee of this office to modify a certification page by including the written paragraph which appears on the top half of the page." *Id.*

For the above reasons, Petitioner has failed to authenticate Exhibit 1 to his reply, and the undersigned will deny his request to expand the record to include Exhibit 1.

## III. PETITIONER'S MOTION FOR AN ORDER COMPELLING DISCOVERY

Petitioner has filed a motion for an order compelling discovery. In his motion, Petitioner seeks discovery of any papers, documents, photographs, or objects signed or initialed by Ms. Pluma. He also seeks front-and-back copies of the "single photo" that, according to the police report, was signed on the back by Ms. Pluma after she identified Petitioner.[5] Petitioner argues that if the single photo is produced, it will show that the signature on photograph was not the same as the signature on Petitioner's newly discovered evidence (Exhibit 1 to Petitioner's reply, discussed above) or on the eyewitness preparation form. Petitioner argues that this evidence will show that

---

[5] Petitioner filed several similar previous motions requesting that the Court compel discovery, which were denied without prejudice by the undersigned in a prior order. (Doc. 26).

the prosecution used false information and evidence to obtain a guilty plea and conviction. Petitioner notes that in connection with his motion for post-conviction relief, he requested that the state court order the state to disclose the single photo, but the court denied the request on the ground that Petitioner's claim that counsel was ineffective for failing to file and litigate a motion to suppress statements would not be cognizable in a motion for post-conviction relief following a guilty plea.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6(a) of the Rules Governing § 2254 Cases states, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." To establish good cause, a petitioner must make "specific allegations" that give a court "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Newton v. Kemna*, 354 F.3d 776, 783 (8th Cir. 2004) (quoting *Bracy*, 520 U.S. at 904 & 908-09).

Petitioner cannot satisfy this standard. Petitioner argues that if the requested discovery is allowed, the results will show either that no "single photo" of Petitioner signed by Ms. Pluma exists, or that any such photo contains a forged signature. However, the only support Petitioner offers for this argument is the "newly discovered evidence" in Exhibit 1 to his reply—which the undersigned has already found bears no indicia of reliability and whose existence is utterly inconsistent with the police report's description of how the identification procedures were conducted. Petitioner's suggestion that the signed "single photo" either never existed or was falsified is based only on his speculation. The police report plainly indicates that police officers prepared a six-photo lineup, cut the lineup into six separate photographs, and showed them to Ms.

Pluma in random order (with Petitioner's being shown fourth). *See* Resp't Ex. A, at 118-20. The police report further states that Ms. Pluma identified Petitioner's photograph and signed and dated the back of it. Although the record does not contain the signed photograph itself, it does contain a "Photo Lineup Worksheet" indicating that Ms. Pluma identified the photograph bearing the number "41186542" (which Petitioner acknowledges is his photograph). *Id.* at 120.

Petitioner offers the Court no reasonable basis on which to believe that the requested discovery would in any way contradict the account in the police report. Thus, Petitioner has not shown good cause for the discovery sought, and his motion will be denied. *See Williams v. Wallace*, No. 4:14-CV-411-CEJ, 2016 WL 3015162, at *3 (E.D. Mo. May 26, 2016) (petitioner did not show good cause for discovery by submitting "several documents that give the appearance of being internal communications between employees of the St. Louis County Police DNA unit" purportedly showing efforts by laboratory staff to alter crime scene DNA results, where "[t]he bulk of the documents post-date petitioner's guilty plea and are unsigned, unauthenticated, and lack any indicia of reliability").

## IV. LEGAL STANDARDS FOR EVALUATING PETITION FOR WRIT OF HABEAS CORPUS

### A. Legal Standard for Reviewing Claims on the Merits

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may not grant habeas relief to a state prisoner with

respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedents "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

## B. Procedural Default

To preserve a claim for federal habeas review, a state prisoner must present that claim to the state court and allow that court the opportunity to address the claim. *Moore-El v. Luebbers*,

446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).

"Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *accord Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## V. DISCUSSION OF PETITIONER'S CLAIMS

Petitioner asserts six grounds for relief in his petition. The undersigned will address each in turn.

### A. Ground One: Actual Innocence

In Ground One, Petitioner asserts that he is actually innocent of the crime of which he was convicted. Petitioner appears to be asserting his actual innocence both as a "gateway" to permit him to bring his procedurally defaulted claims and as a freestanding claim.

The Court first considers whether actual innocence provides a gateway to permit Petitioner to bring his procedurally defaulted claims. Under the fundamental miscarriage of justice exception to procedural default, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496. *See also Burton v. Dormire*, 295 F.3d 839, 846 (8th Cir. 2002) (explaining that "a federal habeas court [can] address the merits of defaulted claims if a prisoner first prove[s] he [is] actually innocent of the charged crime or crimes") (citing *Schlup v. Delo*, 513 U.S. 298, 314-316 (1995)). To fit within this exception, Petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy*, 652 F.3d at 850 (quoting *Abdi*, 450 F.3d at 338). He must also show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir. 2005) (quoting *Schlup*, 513 U.S. at 327). In making this determination, the habeas court is permitted to consider the probative force of all relevant evidence, regardless of whether it was "excluded or unavailable at trial." *Schlup*, 513 U.S. at 327-28. "[T]he standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* at 329. The Supreme Court has also instructed that "the *Schlup* standard is demanding and permits review only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted).

Petitioner cannot satisfy the *Schlup* standard. The only "new evidence" on which Petitioner relies is the Exhibit 1 to his reply, the lineup document purportedly showing that Victoria Pluma circled the photograph of someone other than Petitioner. The undersigned has already found that Exhibit 1 not been authenticated and bears no indicia of reliability, and that it is flatly contradicted

by reliable evidence in the record, including the police report's clear description of how the lineup was conducted. Even if Exhibit 1 is considered in conjunction with the other evidence in the case, Petitioner has not shown that it is more likely than not that no reasonable juror would have convicted him in light of that evidence. Thus, Petitioner has not satisfied the fundamental miscarriage of justice exception to procedural default.

Petitioner also suggests that he has shown that the State never had in its possession evidence that Ms. Pluma identified Petitioner as the robber. That contention is without merit. Although the record does not contain the individual photograph that Ms. Pluma signed, the record does contain the police report's clear description of Ms. Pluma's identification of Petitioner's photograph as that of the robber.

For the same reasons that he has not shown actual innocence for purposes of overcoming procedural default of his other claims, Petitioner cannot show that he is entitled to bring a freestanding claim of actual innocence. The Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggins v. Perkins*, 133 S.Ct. 1924, 1931 (2013). "The Court has established, however, that the threshold for any such claim, if it were recognized, would be 'extraordinarily high.'" *Dansby v. Hobbs*, 766 F.3d 809, 817 (8th Cir. 2014) (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). "[O]n a freestanding claim of actual innocence, it is not sufficient that a petitioner shows even that it is 'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup*, 513 U.S. at 327). "The 'extraordinarily high' threshold, if recognized, would be even higher." *Id.* Because Petitioner cannot satisfy even the lower standard that is applicable to gateway claims of actual innocence, he cannot satisfy this higher standard. Therefore, the undersigned recommends that Ground One be denied.

**B. Ground Two: Violation of *Brady v. Maryland* and Missouri Supreme Court Rule 25.03**

In Ground Two, Petitioner argues that the state prosecutor failed to comply with its duty under *Brady v. Maryland*, 373 U.S. 83 (1963), and its duty under Missouri Supreme Court Rule 25.03, to disclose exculpatory evidence. To the extent that Petitioner's claim is based on a violation of Missouri law, such a claim is not cognizable for purposes of federal habeas review. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[F]ederal habeas relief does not lie for errors of state law.") (quotation marks omitted); *Lee v. Norris*, 354 F.3d 846, 847 (8th Cir. 2004) ("[A] mere violation of state law . . . is not cognizable in federal habeas."). However, the undersigned will consider Petitioner's claim that a *Brady* violation occurred.

The petition does not specify what exculpatory evidence was not disclosed. However, in his reply, Petitioner argues that the exculpatory evidence at issue is the version of the photo lineup he attached as Exhibit 1 to his reply. In addition, Petitioner suggests that there may exist an undisclosed single photo bearing the forged signature of Victoria Pluma, which he claims would be exculpatory. Petitioner did not raise this in his post-conviction proceedings, so it has been procedurally defaulted. *See Vogl v. State*, 437 S.W.3d 218, 226 (Mo. 2014) ("Rule 24.035 is the exclusive procedure by which a person convicted of a felony on a guilty plea may seek post-conviction relief."); *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006) (claims not presented in motion for post-conviction relief or appeal to the Missouri Court of Appeals are procedurally defaulted).

Even assuming, *arguendo*, that Petitioner could overcome his procedural default of Ground Two, this claim would fail on its merits. The undersigned begins by noting that Petitioner pleaded guilty to the offenses at issue here, which limits the claims he may bring. As the Supreme Court explained in *Tollett v. Henderson*,

> A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

411 U.S. 258, 266 (1973). After a guilty plea, collateral review of the plea "is ordinarily confined to whether the guilty plea was both counseled and voluntary." *Pennington v. United States*, 374 F. Supp. 2d 813, 816 (E.D. Mo. 2005) (citing *United States v. Broce,* 488 U.S. 563, 569 (1989)). A plea is voluntary if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)).

Reading the petition and reply broadly, it appears that Petitioner is contending that because the prosecution violated *Brady* by failing to disclose exculpatory material, Petitioner's guilty plea was not knowing and voluntary. The undersigned first notes that that the law is unclear regarding whether the Constitution requires a prosecutor to disclose exculpatory material prior to the entry of a guilty plea.[6] However, the Court need not resolve the issue of whether the prosecution has a

---

[6] In *United States v. Ruiz*, 536 U.S. 622 (2002), the Supreme Court held that the Constitution does not require disclosure of *Brady* impeachment evidence prior to a guilty plea, but it did not specifically address disclosure of exculpatory evidence. Courts have subsequently disagreed about whether *Brady* requires disclosure of exculpatory evidence prior to a guilty plea. *Compare, e.g.*, *United States v. Conroy*, 567 F.3d 174, 178-79 (5th Cir. 2009) (a guilty plea precludes a defendant from asserting a *Brady* violation based on failure to disclose exculpatory evidence), with *United States v. Ohiri*, 133 F. App'x 555, 561-62 (10th Cir. 2005) (distinguishing *Ruiz* and holding that a defendant could assert a *Brady* violation based on failure to disclose exculpatory evidence). *See also Carter v. Hobbs*, No. 5:10CV00346 JMM/JTR, 2013 WL 1668988, at *6 (E.D. Ark. Mar. 25, 2013) (finding no clearly established right to *Brady* exculpatory evidence prior to a guilty plea,

constitutional duty to disclose exculpatory material prior to a guilty plea, because Petitioner has not established the existence of any exculpatory material that the prosecution failed to disclose. The unauthenticated document attached to his reply does not suffice. *Cf. Williams*, 2016 WL 3015162, at *3 (rejecting the petitioner's *Brady* claim after a guilty plea and stating, "petitioner's statements establish that his plea was knowing and voluntary and he cannot overcome them merely by reference to the unauthenticated documents [containing purportedly exculpatory information] attached to his traverse.").

Petitioner also suggests that if the prosecution were to disclose the "single photo" that Ms. Pluma supposedly signed, that photo would be exculpatory, because it would show only a forged signature by Detective Carroll. To support his claim that such a forged photo exists, Petitioner argues that the police report shows that Ms. Pluma actually identified someone other than himself in the photo lineup, because his photograph was in the number one position, and she identified a photograph in the number four position. Petitioner's argument is without merit. When the police report, six-person photo lineup, and photo lineup worksheet are read together, it is clear that although Petitioner's photograph was in the number one position on the six-person lineup sheet, his photograph was in the number four position when the lineup sheet was cut into individual photographs and placed in random order for viewing by Ms. Pluma. The police report states that the officer prepared a photo lineup (Lineup #79358) containing six photographs, and it contains a list showing that on that six-person photo lineup sheet, Photo #1 was Petitioner. Resp't Ex. A, at 118. The order shown in the police report is consistent with the order that can be seen in the six-photo lineup sheet in the record. *See* Resp't Ex. H, at 6. The police report goes on to say that the

because "numerous courts have concluded [after *Ruiz*] that there is no federal constitutional right to the disclosure of *Brady* information prior to the entry of a guilty plea, regardless of whether it is exculpatory evidence, as opposed to impeachment evidence."). The Eighth Circuit has not yet addressed the issue.

lineup was printed out "and cut into individual photos so they can be placed in random order for viewing," and that the reader should "[r]efer to the department Photo Lineup Worksheet for additional information as to the presentation of photos." *Id.* at 119. The photo lineup worksheet lists the six photos (with their tracking numbers) in a different order, reflecting the order in which the individual, cut-out photos were presented for to the witness for viewing. *Id.* at 120. In that list, Petitioner's photo was in the number four position. Thus, the six-person photo lineup, the police report, and the photo lineup worksheet, read together, show that Ms. Pluma identified Petitioner, not someone else. They thus provide no evidence that there is exists an undisclosed, exculpatory photograph containing a forged signature.[7]

In sum, Petitioner's contention that exculpatory evidence exists that should have been disclosed under *Brady* is not supported by the record, and his unsupported contention that such evidence might exist is not sufficient to establish a *Brady* violation. *See United States v. Walker*, 276 F. App'x 538 (8th Cir. 2008) ("[D]efendant cannot succeed on a claim under *Brady v. Maryland* based on his contention that exculpatory evidence might exist.") (citation omitted). Petitioner's testimony at the plea hearing shows that his plea was knowing and voluntary. *See* Resp't Ex. A, at 18-22. Therefore, the undersigned recommends that Ground Two be denied.

### C. Ground Three: Police and Prosecutor Misconduct

In Ground Three, Petitioner argues that Detective Carroll and state prosecutor Gentry Smith violated his due process rights by obtaining, manufacturing, and fabricating false photo identification evidence in a photo lineup worksheet in order to illegally procure Petitioner's guilty plea as to first-degree robbery and armed criminal action. Petitioner claims that he was thereby

---

[7] As discussed below in Ground Four, Petitioner presented this factual argument to the state courts in the context of a different claim, and the state courts came to the same conclusion as the undersigned.

tricked into pleading guilty. Petitioner did not present this claim to the state courts, so it has been procedurally defaulted.

As with Ground Two, the undersigned will construe Ground Three as asserting that due to the alleged police and prosecutor misconduct, Petitioner's guilty plea was not knowing and voluntary. Even assuming, *arguendo*, that Petitioner could overcome his procedural default of Ground Three, this claim would fail on its merits.

Petitioner's asserted basis for Ground Three is the same as his asserted basis for Ground Two: he claims that the police report and photo lineup worksheet suggesting that Ms. Pluma identified someone other than him as the robber, along with the photo lineup he attached as Exhibit 1 to his reply, show that the prosecution and Detective Carroll conspired to fabricate false information that he was given prior to entering his guilty plea. As explained with respect to Ground Two, however, Petitioner's unsupported speculation and the unauthenticated document he attached to his reply do not suffice to show any police or prosecutor misconduct that might form the basis of a finding that Petitioner's guilty plea was not voluntary.

For the above reasons, the undersigned recommends that Ground Three be denied.

### D. Ground Four: Ineffective Assistance of Counsel—Failure to Investigate Fabrication of Evidence

In Ground Four, Petitioner asserts that his plea counsel was ineffective because no evidence of guilt existed at the time of the plea being entered, and had counsel performed an adequate investigation, he would have discovered that the evidence relied on by the State at the time the plea of guilt was entered was false and fabricated by Detective Carroll. Petitioner did not present

this claim to the state courts in his motion for post-conviction relief pursuant to Missouri Supreme Court Rule 24.035, so it is procedurally defaulted.

Even assuming, *arguendo*, that Petitioner could overcome the procedural default of Ground Four, this claim would fail on the merits. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, Petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687. In *Hill v. Lockhart*, the Supreme Court applied *Strickland*'s two-part test to ineffective assistance of counsel claims arising in the context of guilty pleas. 474 U.S. 52, 57-59. (1985). To satisfy the first prong, the petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 57. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and internal quotation marks omitted). To satisfy the second prong in the guilty plea context, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Petitioner cannot establish either prong of *Strickland*. First, there is nothing in the record to suggest that Petitioner's plea counsel's performance fell below an objective standard of reasonableness. Although Petitioner asserts in a conclusory manner that his plea counsel knew or should have known that the prosecution had conspired with Detective Carroll to fabricate false or misrepresentative photo information, the record contains no support for that assertion. Petitioner also asserts that his plea counsel knew that the State had not presented or produced any evidence

of Petitioner's guilt. However, that assertion is flatly contradicted by the record, which (as discussed in detail above) shows that the prosecution had a police report and photo lineup worksheet that, read together, clearly indicate that an eyewitness had identified Petitioner in a photo lineup. Petitioner presents nothing to suggest that plea counsel should have been on notice that this evidence was, or even might have been, fabricated, such that plea counsel was obligated to investigate that possibility. Moreover, at Petitioner's plea hearing, Petitioner stated in open court that he had had sufficient opportunity to discuss his case with his counsel, that Petitioner was satisfied that counsel was aware of all of the information he needed to adequately advise and represent petitioner, that counsel had advised Petitioner as to all aspects of the case, and that Petitioner was satisfied with the services rendered to him by counsel. *See* Resp't Ex. A, at 18-19. "While a guilty plea taken in open court is not invulnerable to collateral attack in a post-conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Nguyen*, 114 F.3d at 703. For the above reasons, Petitioner cannot establish the first prong of *Strickland*.

Second, there is nothing in the record to support Petitioner's suggestion that, had his plea counsel conducted an adequate investigation, he would have discovered that the evidence on which the prosecutor relied had been fabricated, such that Petitioner would have decided not to plead guilty. Thus, Petitioner cannot establish the second prong of *Strickland*.

For all of the above reasons, the undersigned recommends that Ground Four be denied.

### E. Ground Five: Ineffective Assistance of Counsel—Failure to Investigate the Defense that Victoria Pluma Had Not Identified Petitioner

In Ground Five, Petitioner asserts that his plea counsel was ineffective because he failed to investigate the defense that Ms. Pluma had not identified Petitioner as the person who robbed her. Petitioner argues that because there were "great discrepancies" between the police report, the photo

lineup worksheet, and the photo lineup array, his counsel should have conducted an investigation. Petitioner presented this claim in his motion for post-conviction relief and in his appeal from the denial of that motion, and the Missouri courts denied the claim on its merits.

In reviewing this claim, the Missouri Court of Appeals noted that Petitioner argued that the record (in particular, the photo lineup worksheet and the police report) showed that Ms. Pluma had identified an individual other than Petitioner. Resp't Ex. E, at 3. However, after analyzing those documents, the Missouri Court of Appeals found that Petitioner's argument was "refuted by the record." *Id.* The Missouri Court of Appeals stated:

> The police report shows the detective prepared a six-person photographic lineup, using the REJIS Crime Matrix Image Resource Information System ("IRIS"). Williams' photo was listed as the number one photo, and identified by a tracking number. The detective's narrative report states that he printed the photos and cut them into individual photos to be "placed in random order for viewing." The report refers to the photo lineup worksheet, noting it contains "additional information as to the presentation of photos." The photo lineup worksheet lists the photo numbers under "Photo Lineup Composition," which indicates Williams' photo, identified by the tracking number, was in the number four position. A check mark was placed next to Williams' photo, indicating the witness's identification of Williams. In addition, the narrative portion of the police report also indicated the witness identified photo number four as the person she saw in the restaurant at the time of the robbery.
> While the police report does initially contain a list of photographs and tracking numbers, with Williams' photograph in the number one position, it is clear from a reading of both the police report and the photo lineup worksheet that the original numbering of the photographs was simply for the purpose of a list of the individuals to be included in the lineup. The report clearly states the photos were printed separately and placed in a random order for viewing. The order was then listen on the photo lineup sheet, with Williams' photo in the number four position. As previously noted, the report indicated the witness identified photo number four as the person she saw at the time of the robbery.

*Id.* at 3-4.

The Missouri Court of Appeals' decision was entirely reasonable and not contrary to *Strickland*. Indeed, the Missouri Court of Appeals' assessment of the documents at issue is the same as the undersigned's assessment, discussed *supra*. Read together, the documents do not

contain discrepancies, but rather show that Ms. Pluma did identify Petitioner. There is nothing in the record that would have suggested to Petitioner's counsel that Ms. Pluma had not actually identified Petitioner, such that he was obligated to investigate that possibility. Thus, Petitioner cannot show that his counsel's performance fell below an objective standard of reasonableness by not conducting such an investigation. Moreover, as discussed above with respect to Ground Four, Petitioner testified that he was satisfied that counsel was aware of all of the information he needed to adequately advise and represent Petitioner, that counsel had advised Petitioner as to all aspects of the case, and that Petitioner was satisfied with the services rendered to him by counsel. *See* Resp't Ex. A, at 18-19. For the above reasons, Petitioner cannot establish the first prong of *Strickland*.

Second, there is nothing in the record to support Petitioner's suggestion that, had his plea counsel conducted an adequate investigation, he would have discovered that Ms. Pluma did not actually identify Petitioner, such that Petitioner would have decided not to plead guilty. Thus, Petitioner cannot establish the second prong of *Strickland*.

For all of the above reasons, the undersigned recommends that Ground Five be denied.

### F.  Ground Six: Ineffective Assistance of Plea Counsel Based on the Failure to File a Motion to Suppress Identification

In Ground Six, Petitioner asserts that his plea counsel was ineffective because he failed to file a motion to suppress the identification of Ms. Pluma. Petitioner argues that a motion to suppress would have been granted because Ms. Pluma had not actually identified Petitioner as the robber.  Petitioner presented this claim in his motion for post-conviction relief and in his appeal from the denial of that motion, and the Missouri courts denied the claim on its merits.

As with Ground Five, the Missouri Court of Appeals found that Petitioner's argument was refuted by the record, which showed that Ms. Pluma had, in fact, identified Petitioner. Resp't Ex.

E, at 4-5. As discussed above, the undersigned finds that this conclusion was reasonable and not contrary to *Strickland*. Petitioner has not shown any basis for a finding that his counsel acted below an objective standard of reasonableness by not filing a motion to suppress Ms. Pluma's identification of him, nor has he shown any basis for a finding that such a motion would have been successful and would have caused him not to plead guilty.

For the above reasons, the undersigned recommends that Ground Six be denied.

## VI.   CONCLUSION

For all of the foregoing reasons, the undersigned finds that the record should not be expanded to include Exhibit 1 to Petitioner's reply; that Petitioner's Motion for an Order Compelling Discovery (Doc. 42) should be denied, that Petitioner's petition for a writ of habeas corpus should be denied, and that this case should be dismissed.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of January, 2017.